IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

**MELISSA McKEE,**

    **Plaintiff,**

    v.                                         Case No. 3:25cv1005

**SASA ESPINO, MD,**

**COLUMBIA HEALTHCARE OF CENTRAL
VIRGINIA, INC. d/b/a RICHMOND
BREAST CENTER, and**

**CHIPPENHAM & JOHNSTON-WILLIS
HOSPITALS, INC.,**

    **Defendants.**

**COMPLAINT FOR DAMAGES**

    Plaintiff Melissa McKee, by counsel, files this Complaint against Defendants Sasa Espino, MD, Columbia Healthcare of Central Virginia, Inc. d/b/a Richmond Breast Center, and Chippenham & Johnston-Willis Hospitals, Inc., jointly and severally.  In support of her claims she alleges as follows:

**PARTIES**

    1. Plaintiff Melissa McKee is a resident of the State of North Carolina.

    2. Defendant Sasa Espino, MD ("Dr. Espino") is a physician licensed to practice medicine in the Commonwealth of Virginia, and, at all relevant times, maintained a medical practice in Richmond, Virginia.  For purposes of this lawsuit, Sasa Espino is either a resident of Alabama or Virginia.

    3. Defendant Columbia Healthcare of Central Virginia, Inc. d/b/a Richmond Breast Center ("Richmond Breast Center") is a corporation incorporated under the laws of the Commonwealth of Virginia, with its principal place of business located in Richmond, Virginia.  Richmond Breast Center is a citizen of Virginia for purposes of diversity jurisdiction.

    4. Defendant Chippenham & Johnston-Willis Hospitals, Inc. ("Chippenham Hospital" or "the Hospital" or "CJW") is a corporation incorporated under the laws of the

1

Commonwealth of Virginia, with its principal place of business located in Richmond, Virginia. Chippenham Hospital is a citizen of Virginia for purposes of diversity jurisdiction.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), as there is complete diversity of citizenship between Plaintiff and all Defendants, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and Defendants reside or are subject to personal jurisdiction in this district under Virginia's Long Arm Statute.

7. This Court has personal jurisdiction over all Defendants because they conducted substantial business in Virginia and are alleged to have committed tortious acts in this Commonwealth.

## FACTUAL ALLEGATIONS

8. At all times relevant to this Complaint, Plaintiff was a patient of Defendants who sought and received medical care for breast-related treatment.

9. Dr. Espino held herself out as qualified and competent to perform reconstructive and plastic surgery procedures, as well as "breast surgery" and breast-cancer related procedures.

10. Richmond Breast Center operated a medical practice providing breast surgery and related services, and employed Dr. Espino to provide medical services to patients, including Plaintiff.

11. CJW granted credentials to Dr. Espino to perform surgical procedures in its operating rooms, including reconstructive and plastic surgery procedures such as implant reconstruction after mastectomy and revisions of those procedures.

12. Plaintiff underwent medical treatment and surgical procedures performed by Dr. Espino in operating rooms at Chippenham Hospital.

13. During the course of Plaintiff's treatment, Dr. Espino deviated from the applicable standard of care in their evaluation, treatment, surgical technique, and/or post-operative care of Plaintiff.

2

14. Dr. Espino owed a duty of care to the plaintiff to comply with the applicable standards of care.

15. Dr. Espino violated the standard of care by performing surgical procedures that were beyond the scope of her practice and training, and by negligently performing multiple procedures on Plaintiff, including:

> a. Negligently performing implant reconstruction procedures when such procedures were beyond the scope of her practice and training;
>
> b. Negligently performing revision procedures related to implant reconstruction when such procedures were beyond her training;
>
> c. Negligently performing or attempting to perform liposuction procedures;
>
> d. Negligently performing or attempting to perform fat grafting procedures;
>
> e. Negligently performing or attempting to perform a hip-to-hip excision of the patient's lower abdomen, for which she obtained authorization for insurance coverage by claiming that the patient suffered from a "malignant neoplasm of connective and soft tissue of the abdomen" even though there was no pathology or other test result suggesting malignancy, and where the tissue she removed did not contain any seroma or hematoma from a prior surgical procedure;

```
DIAGNOSES                                                                              POA INDICATOR   CODESET
REASON FOR VISIT DX
         R19.02        LEFT UPPER QUADRANT ABDOMINAL SWELLING, MASS AND LUMP                           ICD10
         R10.12        LEFT UPPER QUADRANT PAIN                                                        ICD10
PRIMARY CODESET
PRINC DX  C49.4        MALIGNANT NEOPLASM OF CONNECTIVE AND SOFT TISSUE OF ABDOMEN                     ICD10
OTHER DX  M79.89       OTHER SPECIFIED SOFT TISSUE DISORDERS                                           ICD10
          E11.9        TYPE 2 DIABETES MELLITUS WITHOUT COMPLICATIONS                                  ICD10
          E78.00       PURE HYPERCHOLESTEROLEMIA, UNSPECIFIED                                          ICD10
          J43.9        EMPHYSEMA, UNSPECIFIED                                                          ICD10
          Z79.51       LONG TERM (CURRENT) USE OF INHALED STEROIDS                                     ICD10
          Z79.84       LONG TERM (CURRENT) USE OF ORAL HYPOGLYCEMIC DRUGS                              ICD10
          Z87.891      PERSONAL HISTORY OF NICOTINE DEPENDENCE                                         ICD10
```

> f. Negligently performing a right breast capsulectomy with implant reconstruction at Chippenham Hospital;
>
> g. Negligently performing bilateral breast reconstruction revision at Chippenham Hospital;
>
> h. Negligently discharging Plaintiff home on November 20, 2024, when she was actively bleeding, demonstrating inadequate post-operative assessment and monitoring;

3

      i. The foregoing negligent discharge directly necessitated a right breast hematoma evacuation procedure on November 21, 2024, also performed at Chippenham Hospital.

      j. Espino failed to ensure that Plaintiff understood the risks, benefits, and alternatives to original risk-reducing mastectomy procedure with implant reconstruction and for all subsequent surgeries performed by Espino because she never disclosed that she was not a plastic and reconstructive surgeon and never presented McKee with the facts a reasonable person would want to know before she provided her consent, and consistently mislead her about her surgical options including the use of the patient's own tissue to reconstruct her breasts, insisting upon using large breast implants, only to later perform at least four fat grafting procedures on the patient's breasts.

16. The medical negligence of Dr. Espino also included, but was not limited to:

      a. Failure to properly evaluate Plaintiff's condition and surgical candidacy;

      b. Failure to obtain proper informed consent;

      c. Improper surgical technique;

      d. Failure to recognize and address surgical complications in a timely manner;

      e. Inadequate post-operative monitoring and care;

      f. Failure to refer Plaintiff to appropriate specialists when indicated;

      g. Deviation from accepted standards of medical and surgical practice; and

      h. Other acts and omissions to be detailed through discovery and expert testimony.

17. As a direct and proximate result of the negligence of Dr. Espino, Plaintiff suffered severe and permanent injuries, including but not limited to:

      a. Physical pain and suffering;

      b. Emotional distress and mental anguish;

      c. Disfigurement and scarring;

      d. Need for additional corrective surgeries;

      e. Lost wages and diminished earning capacity;

      f. Medical expenses, both past and future; and

      g. Permanent impairment and disability.

18. The risk of bodily harm is inherent in surgery.

19. CJW had a duty to conduct a systemic review and accreditation process for surgeons seeking privileges to operate at its facilities, including Dr. Espino.  This duty was continuous in nature.

20. CJW had a continuing duty to evaluate surgeons to whom it had granted operating privileges, including Dr. Espino, to ensure such surgeons were not a danger to the community of patients being operated on at CJW's facilities.

21. It was foreseeable that if CJW opened its facilities to a demonstrably incompetent professional, injury to patients would occur, including to Plaintiff.

22. CJW had a duty to avoid knowingly or negligently permitting a surgeon lacking required professional credentials, training, and skills to use its facilities to perform a particular type of surgery on human beings.

23. CJW negligently provided credentials and surgical privileges to Dr. Espino to perform reconstructive and plastic surgery procedures in its operating rooms when:

      a. Dr. Espino was not a board-certified reconstructive and plastic surgeon; and

      b. Dr. Espino had not completed a fellowship program in reconstructive and plastic surgery accredited by the Accreditation Council for Graduate Medical Education (ACGME).

24. At the time it provided Dr. Espino with privileges to perform reconstructive and plastic surgeries (in addition to breast surgery), CJW knew or should have known that Dr. Espino was not qualified to perform reconstructive and plastic surgery, including specifically implant reconstruction following mastectomy, abdominal surgeries,

25. At the time it provided Dr. Espino with privileges to perform reconstructive and plastic surgeries, CJW knew or should have known that Dr. Espino was not trained in reconstructive and plastic surgery.

26. CJW provided credentials to Dr. Espino to perform reconstructive and plastic surgeries, including:

5

a. Breast reconstruction with implants;

b. Latissimus dorsi (LD) flap reconstruction;

c. Revision of breast reconstruction surgery, including those incorporating breast implants;

d. Liposuction and fat grafting procedures; and

e. Other complex plastic and reconstructive surgery procedures, including abdominal surgeries that appear to be "tummy tucks" or panniculectomies.

27. Chippenham Hospital's negligent credentialing of Dr. Espino directly enabled her to perform the following reconstructive and plastic surgery procedures at its facility:

a. Bilateral breast fat grafting;

b. Abdominal wall "excisional biopsy" in the area where Espino had performed liposuction, resulting in a tissue sample that was 51.5 x 16 x 5.3 cm.

c. Bilateral breast fat grafting;

d. Liposuction and right breast fat injection;

e. Right breast capsulectomy and implant replacement;

d. Bilateral breast reconstruction revision on November 20, 2024; and

e. Right breast hematoma evacuation on November 21, 2024.

28. As early as 2021, CJW knew or should have known that Dr. Espino was performing complex reconstructive and plastic surgery in Chippenham's operating rooms that was beyond the scope of her practice and training.

29. By early 2024, CJW had received complaints from reconstructive and plastic surgeons in the Richmond area regarding Dr. Espino's performance of procedures beyond her competence.

30. Despite knowledge of Dr. Espino's lack of qualifications and complaints regarding her performance, CJW failed to revoke or restrict Dr. Espino's privileges to perform reconstructive and plastic surgery, and re-credentialed her in 2023 to continue performing reconstructive and plastic surgery.

31. Chippenham Hospital had a duty to exercise reasonable care in credentialing physicians and granting clinical privileges, including the duty to:

6

      a. Verify the education, training, and experience of physicians seeking privileges;

      b. Investigate the qualifications and competence of physicians;

      c. Review past performance and any history of malpractice or disciplinary actions;

      d. Ensure that clinical privileges granted matched the physician's actual training and competence;

      e. Ensure that physicians granted privileges for reconstructive and plastic surgery were board-certified or had completed ACGME-accredited fellowship training in reconstructive and plastic surgery;

      f. Conduct ongoing monitoring and peer review of physician performance;

      g. Investigate and respond appropriately to complaints from other physicians and medical professionals; and

      h. Take appropriate action when a physician demonstrates incompetence or substandard care, including suspension or revocation of privileges.

      32. Chippenham Hospital breached its duty of care to the plaintiff and the public in credentialing Dr. Espino by negligently granting her privileges to perform reconstructive and plastic surgery procedures when she lacked adequate training, qualifications, and competence to safely perform such procedures, and specifically when she was neither board-certified in reconstructive and plastic surgery nor had completed an ACGME-accredited fellowship in reconstructive and plastic surgery.

      33. Chippenham Hospital further breached its continuing duty by failing to revoke or restrict Dr. Espino's privileges after it knew or should have known that Dr. Espino was performing procedures beyond her competence and training with substandard outcomes and a high rate of complications and revisions needed by her patients.

      34. Had Chippenham Hospital exercised reasonable care in its credentialing process, it would have discovered that Dr. Espino was not qualified to perform the procedures for which he was granted privileges, and would not have granted such privileges had it adhered to its own internal policies regarding surgical credentials.

      35. Plaintiff relied on CJW's credentialing of Dr. Espino and representations about her qualifications in making her decision to consent to all surgeries by Espino, including specifically:

a. The right breast capsulectomy with implant reconstruction on December 11, 2023;

c. The bilateral breast reconstruction revision on November 20, 2024; and

d. The right breast hematoma evacuation on November 21, 2024.

36. Chippenham Hospital's negligent credentialing of Dr. Espino was a proximate cause of Plaintiff's injuries because:

a. Plaintiff would not have suffered injury and harm during her attempted plastic and reconstructive surgeries performed by Espino in Chippenham's operating rooms;

c. Had CJW refused to credential Dr. Espino for reconstructive and plastic surgery, or refused to renew her credentials after gathering information regarding reoperation rates, complications, and objections from local plastic and reconstructive surgeons, Plaintiff would not have been injured in the manner she was;

d. Had Chippenham Hospital not negligently credentialed Dr. Espino to perform reconstructive and plastic surgery procedures, Plaintiff would not have been injured in the manner and to the extent that she was;

e. Had the procedures been performed by a board-certified reconstructive and plastic surgeon—a properly credentialed surgeon for these procedures—Plaintiff would have had a materially better outcome;

f. Plaintiff relied upon the Hospital's implicit representation that Dr. Espino was qualified and competent to perform reconstructive and plastic surgery procedures;

g. The Hospital's negligence enabled Dr. Espino to perform procedures beyond her competence and training.

## COUNT I
## MEDICAL NEGLIGENCE AGAINST DR. SASA ESPINO

37. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

38. At all relevant times, a physician-patient relationship existed between Plaintiff and Dr. Espino.

39. Dr. Espino owed Plaintiff a duty to provide medical care and treatment consistent with the applicable standard of care.

40. Dr. Espino breached the applicable standard of care in his treatment of Plaintiff through the acts and omissions described above and through other acts and omissions to be proven at trial.

41. Dr. Espino's breaches of the standard of care were a proximate cause of Plaintiff's injuries and damages.

42. As a direct and proximate result of Dr. Espino's negligence, Plaintiff has suffered and continues to suffer severe physical, emotional, and economic damages recoverable under Virginia law.

WHEREFORE, Plaintiff demands judgment against Defendant Sasa Espino, MD, for compensatory damages in an amount to be determined at trial, together with pre-judgment and post-judgment interest, costs, attorney's fees to the extent permitted by law, and such other relief as the Court deems just and proper.

## COUNT II
### VICARIOUS LIABILITY AGAINST COLUMBIA HEALTHCARE OF CENTRAL VIRGINIA, INC. d/b/a RICHMOND BREAST CENTER

43. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

44. At all relevant times, Dr. Espino was an employee, agent, or ostensible agent of Richmond Breast Center, acting within the course and scope of her employment or agency.

45. Richmond Breast Center is vicariously liable for the negligent acts and omissions of its employee, Dr. Espino, under principles of respondeat superior and agency.

46. As a direct and proximate result of the negligence of Richmond Breast Center's employees and/or agents, Plaintiff has suffered and continues to suffer severe physical, emotional, and economic damages.

WHEREFORE, Plaintiff demands judgment against Defendant Columbia Healthcare of Central Virginia, Inc. d/b/a Richmond Breast Center, for compensatory damages in an amount to be determined at trial, together with pre-judgment and post-judgment interest, costs, attorney's fees to the extent permitted by law, and such other relief as the Court deems just and proper.

## COUNT III
### NEGLIGENT CREDENTIALING AGAINST CHIPPENHAM & JOHNSTON-WILLIS HOSPITALS, INC.

47. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

48. CJW owed a duty to Plaintiff and other patients to exercise reasonable care in credentialing physicians and granting clinical privileges.

49. This duty included the obligation to verify that Dr. Espino possessed adequate education, training, experience, and competence to safely perform reconstructive and plastic surgery procedures before granting her privileges to perform such procedures.

50. CJW had a continuing duty to conduct a systemic review and accreditation process for surgeons seeking privileges to perform surgery at its facilities, and a continuing duty to evaluate surgeons to whom it had granted operating privileges.

51. Chippenham Hospital breached its duty of care by negligently credentialing Dr. Espino and granting her clinical privileges to perform reconstructive and plastic surgery procedures when she lacked adequate qualifications and competence.

52. Chippenham Hospital's negligent credentialing included:

> a. Failure to adequately verify Dr. Espino's training and experience in reconstructive and plastic surgery;
>
> b. Failure to investigate Dr. Espino's actual competence to perform such procedures;
>
> c. Failure to ensure that clinical privileges matched Dr. Espino's qualifications;
>
> d. Granting privileges for reconstructive and plastic surgery to Dr. Espino when she was not board-certified in reconstructive and plastic surgery;
>
> e. Granting privileges for reconstructive and plastic surgery to Dr. Espino when she had not completed an ACGME-accredited fellowship in reconstructive and plastic surgery;
>
> f. Failure to conduct adequate peer review and ongoing monitoring;
>
> g. Failure to investigate and respond appropriately to complaints from other physicians regarding Dr. Espino's performance;
>
> h. Failure to revoke or restrict Dr. Espino's privileges after learning that he was performing procedures beyond her competence;
>
> i. Failure to take corrective action despite evidence of substandard care; and
>
> j. Other negligent acts and omissions to be proven at trial.

53. Chippenham Hospital's negligent credentialing was a proximate cause of Plaintiff's injuries, incorporating all allegations set forth in paragraphs 19 through 38 above.

54. As a direct and proximate result of Chippenham Hospital's negligent credentialing, Plaintiff has suffered and continues to suffer severe physical, emotional, and economic damages.

WHEREFORE, Plaintiff demands judgment against Defendant Chippenham & Johnston-Willis Hospitals, Inc., for compensatory damages in an amount to be determined at trial, together with pre-judgment and post-judgment interest, costs, attorneys fees to the extent permitted by law, and such other relief as the Court deems just and proper.

## DAMAGES

55. As a result of Defendants' negligence, Plaintiff has suffered and continues to suffer damages including:

    a. Past and future medical expenses;

    b. Past and future pain and suffering;

    c. Emotional distress and mental anguish;

    d. Loss of enjoyment of life;

    e. Disfigurement and scarring;

    f. Permanent impairment and disability;

    g. Lost wages and diminished earning capacity;

    h. Such other damages as may be proven at trial.

56. Plaintiff's damages exceed $75,000.00, exclusive of interest and costs.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Melissa McKee respectfully requests that this Court:

A. Enter judgment in favor of Plaintiff and against all Defendants;

B. Award Plaintiff compensatory damages in an amount to be determined by the jury;

C. Award Plaintiff pre-judgment and post-judgment interest as allowed by law;

D. Award Plaintiff costs and attorney's fees to the extent permitted by law;

E. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

MELISSA McKEE

By Counsel

_____/s/_____

W. Randolph Robins, Jr., Esq.
VSB No. 80868
Michael W. Lantz, Esq.
VSB No. 31737
Lantz & Robins, P.C.
4900 Augusta Ave., Suite 120
P.O. Box 11146
Richmond, VA  23230
(804) 404-7870
(804) 944-9317 (fax)
rrobins@lantzrobins.com
mlantz@lantzrobins.com
rfollett@lantzrobins.com
kphillips@lantzrobins.com